IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PHILLIP BOOSE,

    Petitioner,

v.                                             Case No. 17-cv-303-jdp

LOUIS WILLIAMS II, Warden

    Respondent.

**RESPONDENT'S ANSWER AND RESPONSE TO PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Respondent, by Jeffrey M. Anderson, Acting United States Attorney for the Western District of Wisconsin, by Alice H. Green, Assistant United States Attorney for that District, submits this answer and response to the Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, and asks the Court to deny relief.

## I. Procedural Background

On January 21, 2003, an indictment was returned by a grand jury in the Western District of Missouri charging Petitioner, Phillip Boose, with one count of being an armed career criminal in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Crim. D.E. 11.[1] A violation of being a felon in possession of ammunition would normally carry a statutory penalty of up to 10 years' imprisonment

---

[1] "Crim. D.E." refers to docket entries in Boose's criminal case, *United States v. Boose*, Western District of Missouri, Case No. 03-00015-01-CR-W-HFS.

under § 924(a)(2); however, Boose's status as an armed career criminal under 18 U.S.C. § 924(e), the Armed Career Criminal Act or ACCA, increased the statutory range of punishment to 15 years to life imprisonment.[2]

Boose filed a motion to suppress evidence and statements, which was denied by the trial court. Crim. D.E. 15, 18, 33, 40, 45. Boose then proceeded to a two-day jury trial, and the jury convicted Boose of the sole count. Crim D.E. 51, 53, 59.

On August 7, 2003, a final presentence investigation report (PSR) was issued. *See* Exh. 1, PSR (Filed Under Seal). The PSR calculated a base and total offense level 33, based on Boose's ACCA designation. PSR 5-6; ¶¶ 24-25. Boose had three prior convictions for sale of a controlled substance (cocaine base) in Case No. CR99-4871; all three convictions were in Jackson County, Missouri Circuit Court.[3] PSR 9-10, 14; ¶ 33. Boose was assessed a total of 15 criminal history points, placing him in criminal history category VI. PSR 8-16; ¶¶ 30-42. The PSR calculations resulted in a statutory range of punishment of 15 years to life imprisonment, and a Sentencing Guidelines range of 235 to 293 months' imprisonment. PSR 24-25; ¶¶ 73-74.

Boose objected to his classification as an armed career criminal, because the jury did not return a verdict on the prior convictions beyond a reasonable doubt. Exh. 2, PSR Adden. Aug. 7, 2003 (Filed Under Seal). Boose also objected that his three

---

[2] The ACCA increases the statutory maximum sentence, and requires a 15-year mandatory minimum sentence, if a defendant is convicted of being a felon in possession of a firearm following three previous convictions for serious drug offenses or "violent felon[ies]." 18 U.S.C. § 924(e)(1).

[3] These three prior convictions are the only ones that qualify as ACCA predicate offenses.

convictions should count as only one offense because the state court consolidated the proceedings under one case number. PSR Adden. Aug. 7, 2003.

On September 23, 2003, Boose appeared before the trial court for sentencing. Crim. D.E. 63. The sentencing judge denied Boose's objections to the ACCA designation. Crim. D.E. 66, Sent. Tr. 19-21; PSR Adden. Sept. 24, 2003. The court then sentenced Boose to 240 months' imprisonment. Crim. D.E. 63.

Boose appealed, raising both objections to the ACCA designation that he had presented during the sentencing hearing, and also challenging the denial of the motion to suppress. The Eighth Circuit affirmed. *United States v. Boose*, 92 Fed.Appx. 377, 378-79 (8th Cir.), *cert. denied* 543 U.S. 884 (2004).

On April 15, 2005, Petitioner filed an initial motion under 28 U.S.C. § 2255, raising the same claims he presented on direct appeal. Civ. D.E. 1.[4] That motion was denied on the merits in an order docketed on July 27, 2005. Civ. D.E. 9. Boose filed motions for reconsideration and motions to amend his § 2255 petition, which were also denied. D.E. 11, 16, 20-21, 24.

On January 27, 2011, Boose filed an unauthorized successive motion seeking to vacate his conviction, purportedly under Rule 60 of the Federal Rules of Civil Procedure. Rule 60 D.E. 1.[5] Boose argued that one of the Government's witnesses had

---

[4] "Civ. D.E." refers to docket entries in Boose's initial § 2255 proceeding, *Boose v. United States*, Western District of Missouri Case No. 05-00340-CV-W-HFS.

[5] "Rule 60 D.E." refers to docket entries in the civil proceeding for Boose's successive § 2255 motion, *Boose v. United States*, Western District of Missouri Case No. 11-00119-CV-W-

3

tendered perjured testimony and committed fraud on the court. The district court also denied that motion, noting that Boose had attempted to file other frivolous motions seeking to invalidate his criminal conviction. Rule 60 D.E. 12 at 1; Crim. D.E. 79-95.

Boose has filed a number of motions, seeking permission to file a successive § 2255 motion challenging his conviction, each of which was denied.[6] Boose notably did not file an application in the Eighth Circuit seeking permission to file a successive motion based on the retroactive decision in *Johnson v. United States*, 576 U.S. __, 135 S.Ct. 2551 (2015).

Boose now has filed the instant motion under 28 U.S.C. § 2241, requesting that his sentence be vacated and that he be released from custody. Dkt. 1.[7] In his petition, Boose relies on *Mathis v. United States*, 579 U.S. __, 136 S.Ct. 2243 (2016), to contend that his prior Missouri convictions for selling a controlled substance, in violation of Mo. Rev. Stat. § 195.211 (1999), can no longer qualify as convictions for serious drug offenses to enhance his sentence under the ACCA. According to Boose, because Missouri defines the "sale" of controlled substances to include "offers therefor," § 195.211 is too broad for

---

HFS.

[6] *See Boose v. United States*, No. 07-3907 (8th Cir. April 28, 2008); *Boose v. United States*, No. 09-2526 (8th Cir. Aug. 10, 2009); *Boose v. United States*, No. 10-2598 (8th Cir. Nov. 9, 2010); *Boose v. United States*, No. 11-3877 (8th Cir. Jan. 27, 2012); *Boose v. United States*, No. 12-1864 (8th Cir. May 31, 2012); and *Boose v. United States*, No. 13-3093 (8th Cir. Dec. 26, 2008); and in the Supreme Court, *In Re Boose*, 137 S.Ct. 168 (Oct. 3, 2016), a petition for a writ of habeas corpus which was denied.

[7] "Dkt." refers to docket entries in Boose's current § 2241 proceedings, *Boose v. Williams*, Western District of Wisconsin Case No. 17-cv-303-jdp.

his convictions to qualify as generic drug offenses under the ACCA. Dkt. 1, Petition, pp. 10-11; Dkt. 2, Memorandum of Law.

## II. Analysis

In *Mathis*, the Supreme Court found that the Iowa burglary statute did not qualify as a generic burglary that could enhance a defendant's sentence under the ACCA. The Court concluded that the Iowa statute reached a broader range of places – "any building, structure, *[or] land, water, or air vehicle*" – than a generic burglary would. 136 S.Ct. at 2250 (quoting Iowa Code § 702.12 (2013)) (emphasis and alteration in original). By "specifying multiple means of fulfilling its location element, some but not all of which (*i.e.*, buildings and other structures, but not vehicles) satisfy the generic definition," the Iowa statute was "broader than generic burglary." *Id.* Boose contends that his sentence is now illegal in light of *Mathis* and that he qualifies for collateral relief from his sentence under the savings clause in § 2255(e). Respondent disagrees.

### A. Legal Framework

A federal prisoner who challenges the validity of his sentence is ordinarily required to bring his claim as a § 2255 motion in the sentencing court. *See Taylor v. Gilkey*, 314 F.3d 832, 834 (7th Cir. 2002). A federal prisoner whose claim falls within the scope of a 28 U.S.C. § 2255 motion may nonetheless file for a writ of habeas corpus under 28 U.S.C. § 2241 in very limited circumstances as provided in § 2255(e). *Id.* at 835. The threshold question is whether a § 2255 motion would be "inadequate or ineffective to test the legality of [petitioner's] detention." 28 U.S.C. § 2255(e).

A motion under § 2255 is inadequate only "when its provisions limiting multiple § 2255 motions prevent a prisoner from obtaining review of a legal theory that establishes the petitioner's actual innocence." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003); *see also In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998) ("A federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion."). In particular, where there is a change in the law that would render a prisoner actually innocent, yet it is not a rule of constitutional law that would allow the prisoner to bring a successive § 2255 motion pursuant to § 2255(h), § 2241 may be available. *Davenport*, 147 F.3d at 610; *see also Brown v. Rios*, 696 F.3d 638, 640-41 (7th Cir. 2012) (like a claim of actual innocence, a claim that petitioner was sentenced in excess of the statutory maximum is "corrigible" in a savings clause habeas proceeding).

A petitioner who seeks to invoke the savings clause of § 2255(e) to proceed under § 2241 must establish that: (1) he relies on a statutory-interpretation case, rather than a constitutional case, which he cannot invoke by means of a second or successive § 2255 motion; (2) the case applies retroactively on collateral review and the petitioner could not have invoked the rule established by the case in an earlier proceeding; and (3) the error is grave enough to constitute a miscarriage of justice. *See Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016) (citations omitted).

The first prong is satisfied here because *Mathis*, which clarified the Supreme Court's prior opinions in *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276 (2013),

6

and *Taylor v. United States*, 499 U.S. 575 (1990), is a statutory-interpretation case that cannot be invoked in a successive § 2255 motion. Thus, a petitioner's remedy for a misapplication of the ACCA in light of *Mathis* is through a habeas corpus petition under § 2241. *See Holt v. United States*, 843 F.3d 729, 724 (7th Cir. 2016); *Dawkins v. United States*, 829 F.3d 549, 551 (7th Cir. 2016).

As for the second prong, there are two components: retroactivity and prior unavailability of the challenge. Because the divisibility/overbreadth rules in *Mathis* and *Taylor* are not "new," they can be invoked in a collateral proceeding such as this one. *See Whorton v. Bockting*, 549 U.S. 406, 414-16 (2007) (decision that clarifies existing law (and thereby reaffirms an "old rule") applies on collateral review); *Chaidez v. United States*, 568 U.S. \_\_, 133 S. Ct. 1103, 1107 (2013) ("[W]hen we apply a settled rule . . . a person [may] well avail herself of the decision on collateral review."). Although the Seventh Circuit has previously set forth "various formulations" of the unavailability requirement, it has recently made clear that the unavailability requirement is satisfied only "if it would have been futile to raise a claim in the petitioner's original [§] 2255 motion, as the law was squarely against him." *Montana v. Cross*, 829 F.3d at 784 (citations, quotation marks, and alterations omitted). In other words, the claim asserted in the § 2241 motion must have been foreclosed by binding circuit precedent. *Brown v. Caraway*, 719 F.3d at 595 (citing *Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012)).

Boose cannot satisfy the prior unavailability requirement of the second prong or demonstrate a miscarriage of justice under the third prong of the savings-clause relief test. He, therefore, is not entitled to § 2241 relief.

7

**B.     Boose Was Not Foreclosed From Raising His Current Challenge to His ACCA Sentence by the Time of His § 2255 Motion**

The question presented in *Mathis* was whether a statute phrased in alternative "means" of committing an offense (as compared to alternative elements) is divisible, and therefore, amenable to use of the modified categorical approach to determine by which means the defendant violated the statute. As previously mentioned, *Mathis* held that the Iowa general burglary statute, which proscribes unlawful entry into "any building, structure, [or] land, water or air vehicle," Iowa Code § 702.12, is not divisible because the statute creates alternative means of committing the offense, not alternative elements. *See* 136 S.Ct. at 2251, 2253-54. Therefore, the sentencing court erred in using the modified categorical approach to determine whether Mathis's burglary convictions were for the ACCA-qualifying offense of "generic burglary." *See id.* at 2253-54.

The modified categorical approach may not be used for discovering whether a defendant's prior conviction for a too-broad crime under an indivisible statute "rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense." *Mathis*, 136 S.Ct. at 2254. Where a statute is no broader than the generic offense, *Mathis* is inapplicable because there is no reason to employ the modified categorical approach and, therefore, no need to distinguish between means and elements.

Petitioner did not object at trial or on direct appeal to his ACCA classification on the grounds he asserts here, i.e., that Missouri law was too broad to permit the classification of his prior drug convictions under Mo. Rev. Stat. § 195.211 as serious

8

drug offenses within the meaning of the ACCA.  Nor did he raise such a challenge in his § 2255 motion, which was denied on the merits on July 27, 2005, *Boose v. United States*, Case No. 05-cv-340-W-HFS, D.E. 9, and which he did not appeal.

Boose claims that in light of the Eighth Circuit's opinion in *United States v. Mathis*, 786 F.3d 1068 (8th Cir. 2015), and its earlier opinion in *United States v. Bell*, 445 F.3d 1086, 1090-91 (8th Cir. 2006), "circuit law had been against him" at the time of his initial § 2255 motion in 2005.  Dkt. 2, p. 5.  Boose, however, misunderstands the circuit-foreclosure requirement, and neither *Mathis*, *Bell*, nor any other binding Eighth Circuit precedent foreclosed his current claim by the time his § 2255 motion was decided on July 27, 2005.

First, the Eighth Circuit did not decide the post-*Descamps* means-versus-elements divisibility issue in *Mathis* until 2015, well after Boose's § 2255 motion was decided, so the circuit court's opinion in *Mathis* could not have foreclosed the statutory overbreadth claim Boose raises now.  The Eighth Circuit's 2006 opinion in *Bell* also post-dated the district court's order denying Boose's § 2255 motion; nor did it address a means-versus-elements divisibility issue.  Instead, *Bell* held that commercial burglary was a crime of violence under the residual clause of U.S.S.G § 4B1.2(a), and that defendant's undisputed admission in his presentence report that he had been convicted of entering a building was sufficient to conclude that his prior Missouri conviction of second-degree burglary was a generic burglary offense.  *Bell*, 445 F.3d at 1090-91 (citing *United States v. McCall*, 439 F.3d 967, 973-74 (8th Cir. 2006)).

*McCall* was likewise a decision that post-dated Boose's § 2255 proceedings.

9

*McCall* applied the Supreme Court's decisions in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), to conclude that a district court may consider certain judicially-approved documents in the record, including charging and plea documents, to classify a prior conviction as an ACCA predicate offense when appropriately using the modified categorical approach. Cases applying *Taylor* and *Shepard* would not have foreclosed Boose's current means-versus-elements divisibility claim about when it is appropriate to use the modified categorical approach.

Nor would the Eighth Circuit's May 2005 opinion in *United States v. Brown*, 408 F.3d 1016 (8th Cir. 2005), have foreclosed Boose's current claim. In *Brown*, the court of appeals rejected a defendant's argument that delivery, as defined in the Missouri statute, was the equivalent of simple possession and should not qualify as a serious drug offense under the ACCA. That question is different from the issue Boose raises here that offer for sale renders the Missouri statute too broad to be a serious drug offense.

As the Seventh Circuit has observed, "[t]he fact that a position is novel does not allow a prisoner to bypass § 2255, with its one-year deadline, for that would blow away the deadline and leave nothing in its place, as there is no statute of limitations applicable to a federal prisoner's filing a section 2241 petition." *Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2007). Boose has failed to meet the second prong of the test for savings-clause relief and his petition should be denied on that basis alone. Additionally, as explained below, Boose cannot satisfy the third prong of the test for savings-clause relief.

10

**C.     Boose Cannot Establish a Miscarriage of Justice Because the Missouri Controlled-Substance Statute Under Which He was Convicted is Categorically a Serious Drug Offense Under the ACCA**

In addition to federal controlled-substance offenses, the ACCA defines a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). A "controlled substance" is defined in 21 U.S.C. § 802 as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."

Boose objects to the classification of his three prior Missouri convictions in Case No. CR99-4871 as ACCA predicate offenses. On each count, Boose was convicted of a class B felony violation of Mo. Rev. Stat. § 195.211 (1999). *See* Exh. 3, November 9, 1999 Information and Guilty Plea in *State of Missouri v. Phillip E. Boose*, Jackson County, Missouri Case No. 99-4871. The statute of conviction provided that "it is unlawful for any person to distribute, deliver, manufacture, produce, or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." Mo. Rev. Stat. § 195.211, ¶ 1. The statute further provided that, "[a]ny person who violates or attempts to violate this section with respect to any controlled substance except five grams of marijuana is guilty of a class B felony."

11

Mo. Rev. Stat. § 195.211, ¶ 2.[8]

Another provision, Mo. Rev. Stat. § 195.010 (1999), defined various "words and phrases as used in sections 195.005 to 195.425, unless the context otherwise requires" a different meaning. Under Mo. Rev. Stat. § 195.010(8) (1999), deliver or delivery under these various statutes means the "actual, constructive, or attempted transfer from one person to another of drug paraphernalia or of a controlled substance, or an imitation controlled substance, whether or not there is an agency relationship, and includes a *sale*." (Emphasis supplied). Missouri Revised Statute § 195.010(36) (1999) further provided that "sale" includes "barter, exchange, or gift, or *offer therefor*, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employee." (Emphasis supplied).

In Boose's case, the charging document for all three offenses reflects that on three separate occasions between June 10, 1999, and June 23, 1999, in Jackson County, Missouri, petitioner "knowingly sold cocaine base, a controlled substance" to an undercover law enforcement officer, "knowing that it was a controlled substance." *See* Exh. 3, Information. All three offenses were identified in the Information as Class B felonies and were subject to a minimum prison term of five years and a maximum prison term of 15 years, pursuant to Mo. Rev. Stat. § 558.011 (1999). On January 31, 2000, Boose pleaded guilty to all three counts and was sentenced to concurrent terms of five years in prison on each count. The sentences

---

[8] Similarly, 21 U.S.C. § 846 provides that attempts and conspiracies to commit federal controlled-substance offenses are punished the same as the object of the attempt or conspiracy.

12

were suspended and Boose was placed on probation for three years. *See* Guilty Plea and Judgment, attached as Exhibit A to § 2241 petition; Exh. 1, PSR.

Boose argues that Mo. Rev. Stat. § 195.211 encompasses conduct that is broader than the ACCA's definition of a "serious drug offense." Because "sale" is defined in § 195.010(38) as including "offer therefor" Boose in effect contends that *no* conviction under Missouri's statute § 195.211 can qualify as a "serious drug offense" involving distributing or possessing with intent to distribute a controlled substance, or attempting to distribute a controlled substance.[9] In his memorandum of law, Boose cites *State v. Hendricks*, 944 S.W.2d 208 (Mo. banc 1997), as support for his argument

---

[9] In a "supplemental motion," Boose wrongly contends that under *Mathis* his sentence could not be enhanced based on the different-occasions aspect of his three counts of convictions, because, he submits, the dates of each count are merely means and not facts of those convictions. Dkt. 6. Dates are not means of a conviction, and Boose pleaded guilty to each of the three counts. *Mathis* clearly has no impact on the different-occasions issue, which, in any event, has already been decided against Boose at sentencing, on appeal, and in his initial § 2255 proceeding.

Boose also filed a motion to amend his petition, arguing that he could have sold something that appeared to be crack cocaine and would thus have been guilty only of selling or offering for sale an imitation controlled substance – an offense he contends is not a serious drug offense under the ACCA. Dkt. 10. The conviction documents, however, show that Boose was convicted of a Class B felony under Mo. Rev. Stat. § 195.211 (1999) for selling a controlled substance. A different statute, Mo. Rev. Stat. § 195.242 (1999), punished delivery or manufacture of an imitation controlled substance as a Class D felony. Boose was not charged with an offense under § 195.242, and his reliance on the definition of "delivery" in Mo. Rev. Stat § 195.010(8) to support his argument is misplaced. By its terms, the definitions statute applies to "delivery" in at least three different situations: transfers of drug paraphernalia, controlled substances, and imitation controlled substances. *Mathis* has no impact on a court's obligation to determine the elements of the prior crime of conviction by looking to *Shepard* documents and comparing it to the ACCA's requirements. *Cf. United States v. Yang*, 799 F.3d 750, 755-56 (7th Cir. 2015) (sentencing court's resort to *Shepard* documents to identify the statute governing defendant's prior conviction "does not threaten to transform the 'elements-based' inquiry under the categorical approach to the 'evidence-based' inquiry rejected in *Descamps*").

13

that a conviction can be obtained under Missouri law without any proof the defendant had access to the controlled substance offered for sale. Dkt. 2, p. 3. But *Hendricks* is not a decision on the merits of the offer-for-sale issue and, therefore, cannot be an authoritative decision construing Mo. Rev. Stat. § 195.211. In fact, there is no authoritative decision by the Missouri Supreme Court on this issue.

In *Hendricks*, the defendant was found guilty at trial of selling a controlled substance under Mo. Rev. Stat. § 195.211 (1994), which is appears to be materially the same as the 1999 version of the statute under which Boose was convicted. On appeal, Hendricks challenged the sufficiency of the evidence to convict him, arguing that his statement to an undercover officer that he would be willing to sell him an eighth of an ounce of cocaine at a later date did not constitute the sale of a controlled substance. In an unpublished opinion, the Missouri Court of Appeals, Eastern District concluded it would affirm the judgment whether or not § 195.211 had a specific intent requirement because, given the evidence, a reasonable fact finder could have concluded that defendant intended to sell cocaine to the undercover officer. But because the intent issue was one of general interest and first impression, the court of appeals transferred the case to the Missouri Supreme Court for resolution. *State v. Hendricks*, No. 69296, 1996 WL 705881 (Mo. Ct. of App. Dec. 10, 1996).

As framed by the Missouri Supreme Court, the issue before it was "whether the trial court can properly enter a verdict of guilty of selling a controlled substance under § 195.211, RSMo 1994, where a defendant utters the words of an offer to sell but does not actually have the controlled substance in his possession." 944 S.W.2d at 209.

14

As for Hendricks's contention that no evidence established that he had access to the controlled substance, the Missouri Supreme Court majority concluded that his argument "does not allow a decision" because his brief contained no reasoned argument. 944 S.W.2d at 210. Similarly, the court concluded that Hendricks did not develop his alternative argument that a conviction for offering to sell in absence of proof that the substance was controlled would subject him to multiple prosecutions for one sale: the offer to sell a controlled substance under § 195.211 and the sale of an imitation controlled substance under Mo. Rev. Stat. § 195.242. The court did, however, note that "[t]he efficacy of the crime of selling an imitation controlled substance is not diminished by allowing a conviction for offering to sell a controlled substance without requiring presentment of the substance." 944 S.W.2d at 211.

Although *Hendricks* does not provide guidance on this issue, a later opinion from the Missouri Court of Appeals demonstrates that the Missouri statutory scheme requires not only an offer to sell, but also an intention and ability to follow through on the transaction and complete the offer. The language "offer therefor" -- which petitioner contends makes the statute broader than the definition of a "serious drug offense" under the ACCA -- is thus entirely consistent with the ACCA definition.

### 1. "Offer Therefor" Under Missouri Law Requires an Intention to Complete the Offer

In *State v. Sammons*, 93 S.W.3d 808 (Mo. Ct. App. 2002), a confidential informant ("CI") gave defendant Sammons $50 in exchange for a quantity of crack cocaine. That formed Count I of the subsequent charges against Sammons. On a

15

second day, the CI gave Sammons $100 with the anticipation that Sammons would give him crack. Sammons took the money, left the residence and never returned. The CI never received the drugs. This transaction formed the basis for Count II of the indictment.

After his conviction on both counts, Sammons argued on appeal that the trial court erred in submitting Count II to the Jury because the State failed to make a submissible case on that count. Specifically, Sammons argued "the State failed to prove that he knowingly sold a controlled substance because it failed to produce any evidence that Defendant actually possessed or had access to any crack cocaine when he accepted the money from [the CI]. According to Defendant, since he simply took [the CI's] money and never returned with any drugs, the evidence merely shows an intent to steal [the CI's] money." *Sammons*, 93 S.W.3d at 811.

The Missouri Court of Appeals agreed with Sammons and, in doing so, rejected the very argument Boose makes in his § 2241 petition. In *Sammons*, like petitioner here, the State emphasized that "sale" includes an "offer therefor." Thus, the State argued, actual delivery is not an element of the crime. *Sammons*, 93 S.W.3d at 811. The Missouri Court of Appeals said more is required:

> Even if there had been a transfer, the State would have the burden of proving that what was transferred was, in fact, cocaine, thus providing an evidentiary basis for the required finding that Defendant "knowingly sold cocaine" and that he "knew that the substance he sold was cocaine."
>
> Suppose, for example, that the State's evidence was exactly the same except that Defendant returned after a few minutes with a plastic bag filled with a substance that, upon a chemical analysis,

16

> turned out to be talcum powder. If Defendant knew the substance in the plastic bag was talcum powder, he would be guilty of stealing by deceit. If he thought it was crack cocaine, he would be guilty of attempting to sell a controlled substance. It may well be that the State will find it difficult to prove Defendant's state of mind. The fact remains, however, that the ambiguous evidence in this crime is fully consistent with three different crimes: sale of a controlled substance, attempted sale of a controlled substance or stealing by deceit. The evidence is therefore insufficient, without more, to prove the commission of any one of these crimes beyond a reasonable doubt.
>
> We further note that if the State is correct that the mere utterance of the offer for sale is sufficient to support conviction, it would be unnecessary for the State in most cases, even cases involving a completed transfer, to prove that what was transferred was, in fact, a controlled substance. … Since the State would not need to prove that the controlled substance offered for sale even exists, it would not need to prove that Defendant "knew that the substance he sold was cocaine, a controlled substance." Rather, the State would only need to show that Defendant knowingly uttered the words constituting the offer. We cannot agree that this was the legislature's intent.

*Sammons*, 93 S.W.3d at 811-12. Thus, the Missouri Court of Appeals reversed the conviction on the second count finding that, without the *intent* to deliver the drugs, a mere offer to sell drugs simply does not constitute the crime of "sale of a controlled substance." *Id*. at 812.

Given that the Missouri statute requires an offer to sell plus an intent to sell, the combination of the two amounts to an attempt to distribute. In other words, if a defendant is convicted of delivering drugs based on an offer to sell, then the jury necessarily must have found that the defendant intended to follow through on the sale, and hence, was attempting to distribute the drug.

### 2. Even Absent an Intent to Sell, "Offer Therefor" Under Missouri Law Categorically Qualifies as a Serious Drug Offense Under the ACCA

Moreover, even absent an intent to sell, courts have held that conspiracies and attempts to sell "involve" the distribution of controlled substances and are thus a category of activity that the ACCA treats as a serious drug offense. For example, in *United States v. Bynum*, 669 F.3d 880, 886-87 (8th Cir. 2012), the Eighth Circuit concluded that knowingly offering to sell drugs is a serious drug offense under the ACCA. As the court in *Bynum* explained, the term "involving" in the ACCA is an expansive term requiring only that the predicate conviction be related to or connected with drug manufacturing or distribution, and does not require that those acts be elements of the offense. "Knowingly offering to sell drugs is sufficiently 'related to or connected with' drug distribution within the meaning of the ACCA because those who knowingly offer to sell drugs 'intentionally enter the highly dangerous drug distribution world.'" *Bynum*, 669 F.3d at 886 (quoting *United States v. Vickers*, 540 F.3d 356, 365-66 (5th Cir. 2008), and *United States v. Winbush*, 407 F.3d 703, 707 (5th Cir. 2005)). In *Vickers*, the Fifth Circuit held that a Texas conviction of offering to sell drugs, even where the defendant did not have any drugs or intend to obtain them, qualified as a serious drug offense under the ACCA because of the expansive meaning of the term "involving" in the ACCA. *See also United States v. McKenney*, 450 F.3d 39, 43-44 (1st Cir. 2006) (a mere agreement to distribute a controlled substance, even absent an overt act in furtherance of the conspiracy, is sufficient to constitute a serious drug offense under the ACCA). *But see United States v. Whindleton*, 797 F.3d 105 (1st

Cir. 2015) (noting that while "involving" may be expansive, it is not limitless, and concluding that an offer to sell under a New York controlled-substance statute qualified as a serious drug offense under the ACCA because it required intent and ability to proceed with the sale).

*Mathis* does not demand a different result here. Two district courts have recently rejected *Mathis* challenges to similar state statutes. For example, in *Van v. Krueger*, No. 16-cv-1488, 2017 WL 727034, at *3 (C.D. Ill. Feb. 23, 2017), the district court concluded that Minnesota's statute, which penalized offering "to sell, give away, barter, deliver, exchange, distribute or dispose of" drugs, regardless of specific intent or ability to carry out the sale, "involves" the distribution of drugs and is categorically a serious drug offense under the ACCA. *See also United States v. Villella*, No. 16-544, 2017 WL 1519548, at *10 (W.D. Pa. April 27, 2017) (Georgia statute, which petitioner claimed defined sale to include offer to sell, was, like an attempt to sell or conspiracy to sell, necessarily related to and connected with its ultimate goal, the distribution of controlled substances).[10]

---

[10] The Fifth Circuit recently applied *Mathis* to conclude that a prior conviction for delivery of a controlled substance under a Texas statute, where delivery included an offer to sell, was not a controlled-substance offense within the meaning of the sentencing guidelines, U.S.S.G. § 4B1.2(b). *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016); *United States v. Tanksley*, 848 F.3d 347, supplemented by 854 F.3d 284 (5th Cir. 2017). Boose's petition neither cited nor relied on these Fifth Circuit cases, which address another state's statutory scheme and its authoritative decisions, as well as pre-*Mathis* interpretive decisions in a different circuit. Neither case addresses offers to sell as attempted distribution, and neither guideline case is determinative in this ACCA case here or perhaps even in Texas. *Cf. United States v. Vickers*, 540 F.3d 356, 365-66 (5th Cir. 2008) (observing that someone who offers to sell drugs under the Texas statute has placed himself "in the drug marketplace as a seller").

Because the Missouri offense is not too broad to categorically qualify as a serious drug offense under the ACCA, *Mathis* does not affect the conclusion that petitioner's Missouri controlled-substance convictions are proper predicates for the ACCA. Therefore, Boose cannot establish that his ACCA enhancement was a miscarriage of justice and on this basis too he is not entitled to habeas corpus relief.

### III. Conclusion

For the reasons stated above, the petition pursuant to 28 U.S.C. § 2241 should be denied.

Dated this 25th day of July, 2017.

Respectfully submitted,

JEFFREY M. ANDERSON
Acting United States Attorney

By:

*/s/ Alice H. Green*
ALICE H. GREEN
Assistant United States Attorney
222 West Washington Avenue, Suite 700
Madison, Wisconsin 53703
(608) 264-5158
alice.green@usdoj.gov

Of Counsel
Philip M. Koppe
Assistant U.S. Attorney
U.S. Attorney's Office for the
Western District of Missouri
400 E. 9th Street
Kansas City, MO 64106